**WISCONSIN FINANCE CORPORATION, Plaintiff-Appellant,†**

v.

**Roy D. GARLOCK and Karen S. Garlock, Defendants,**

**UNITED STATES OF AMERICA, ADMINISTRATOR OF VETERANS AFFAIRS, Defendant-Respondent.**

Court of Appeals

*No. 86–2095. Submitted on briefs April 13, 1987.—Decided June 24, 1987.*

(Also reported in 410 N.W.2d 649.)

† Petition to review pending. This petition was not decided at the time the volume went press. Its disposition will be reported in a later volume.

On behalf of the plaintiff-appellant the cause was submitted on the briefs of *Craig R. Johnson* of *Vance, Wilcox, Short, Johnson & Ristow, S.C.* of Fort Atkinson.

On behalf of the defendant-respondent the cause was submitted, on the brief of *Harry F. Worth, Jr.* of *Godfrey, Pfeil & Neshek, S.C.* of Elkhorn.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Wisconsin Finance Corporation (WFC), a second-mortgage assignee, appeals a summary judgment dismissing its quiet title action involving property owned by Roy and Karen Garlock and mortgaged to the United States Administrator of Veterans Affairs (VA). On appeal, WFC claims that a preceding foreclosure action purportedly extinguishing its interest in the property was void because its predecessor in interest was not properly served under sec. 180.11(2), Stats. We conclude that WFC's predecessor was not a necessary party to the foreclosure action and therefore service was not required. Alternatively, we also conclude that the substituted service upon WFC's predecessor in interest was valid. Consequently, we affirm.

The material facts in this case are undisputed. On May 27, 1977, Albert and Mary Warner purchased real estate located in Walworth county. On the same day, the Warners executed a purchase money mortgage in favor of Knutson Mortgage and Financial Services (Knutson). This first mortgage on the Walworth county property was guaranteed by the VA and was recorded. On November 17, 1980, the Warners executed a second mortgage to the Money Shop, Inc. (Money). This mortgage was also recorded. Thereafter on December 1, 1980, WFC obtained its interest in the second mortgage by virtue of an assignment from Money. WFC, however, failed to record this assignment of the second mortgage.

In December 1983, Knutson began a foreclosure action against the Warners and Money. A lis pendens was filed with the Walworth county register of deeds in conjunction with this action. Knutson attempted to personally serve Money with a copy of the foreclosure pleadings but discovered that Money had moved from its former address over one year prior to the commencement of the foreclosure action. Knutson also learned through the secretary of state that Money had been dissolved as a corporate entity in Wisconsin. Subsequently, Knutson served Money by publication under sec. 801.11(5)(b), Stats.

Knutson purchased the foreclosed property at the sheriff's sale. Thereafter, Knutson transferred the property by warranty deed to the VA in return for its guarantee. The VA deeded the property to Roy and Karen Garlock and, in return, received a mortgage on the property. All of the conveyances following the foreclosure sale were recorded.

Summary judgment is governed by sec. 802.08, Stats., and is used to determine whether a dispute can be resolved without trial. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115, 334 N.W.2d 580, 582 (Ct. App. 1983). On review of a summary judgment, our standards are identical to those employed by the trial court. *Id.* at 115–16, 334 N.W.2d at 582–83. Summary judgment is appropriate where the determination of an issue of law concludes the case. *Johansen v. Reinemann,* 120 Wis. 2d 100, 101, 352 N.W.2d 677, 678 (Ct. App. 1984). This is such a case. Because the facts are undisputed, we need not undertake the entire traditional summary judgment analysis. We consider the determination of whether the trial court in the preceding foreclosure action had jurisdiction over the parties and thereby entered a valid foreclosure judgment to be a question of law. *See Dragoo v. Dragoo,* 99 Wis. 2d 42, 43, 298 N.W.2d 231, 232 (Ct. App. 1980). Therefore, we consider this issue *de novo* to determine whether summary judgment was properly granted. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

WFC's sole contention on appeal is focused on Knutson's alleged improper service of Money, an entity which appeared on the record as holding a second mortgage encumbrance on the property but which in fact, at the time of the preceding foreclosure action, had assigned all of its interest to WFC. WFC concludes that Money was not properly joined as a party in the foreclosure proceeding and, consequently, the foreclosure judgment was void.

Even accepting WFC's argument that Money was improperly served in the foreclosure action for the

limited purpose of the following analysis, we are unable to track WFC's logic to its proposed conclusion. A judgment may be void for failure to join a necessary party to a foreclosure action, *see, e.g., Baker v. Hawkins,* 29 Wis. 576, 578 (1872); *Stevens v. Campbell,* 13 Wis. 419 (*375), 423 (*379) (1861). Necessary parties to a foreclosure action are parties whose interests are inseparable such that a court would be unable to determine the rights of one party without affecting the rights of another. *See Shields v. Barrow,* 58 U.S. 130, 139 (1855). Necessary defendants to a mortgage foreclosure action include the owners in fee, who hold an equity of redemption, *Baker,* 29 Wis. at 578, or the holders of notes secured by a mortgage which are due. *Pettibone v. Edwards,* 15 Wis. 104 (*95), 107–08 (*98) (1862).

Here, WFC is attempting to include Money as a "necessary party" because it was a junior mortgagee of record, regardless of the fact that Money had assigned its interest to WFC.[1] However, even if Money's record status forced competing lien holders[2] to treat it the same as those record lien holders who maintained an actual interest in the property,[3] we

---

[1]We acknowledge that the more prudent practice is to join all record owners in order to ensure that all outstanding liens are extinguished by a foreclosure proceeding. This, however, begs the question raised in this case of whether it would be fatal to a foreclosure judgment to fail to join a record owner who in fact no longer has any interest in the property.

[2]In Wisconsin, the interest of mortgagee is that of a lien holder. *See* sec. 708.01, Stats. A mortgagee does not have legal title but is merely the holder of a security interest. *State v. Phillips,* 99 Wis. 2d 46, 50, 298 N.W.2d 239, 241 (Ct. App. 1980).

[3]It may be questioned whether a party would be required to serve an entity which in fact has given up any interest in the

cannot conclude that Money was a necessary party to Knutson's foreclosure action. *See Murphy v. Farwell,* 9 Wis. 97 (\*102) (1859). Rather, the rights of subordinate lien holders who are not joined as parties in a foreclosure action are unaffected by their exclusion. *Buchner v. Gether Trust,* 241 Wis. 148, 152, 5 N.W.2d 806, 808 (1942); *Hoppin v. Doty,* 22 Wis. 591 (\*621), 595 (\*624–625) (1868). The failure to join a subordinate lien holder to a foreclosure action does not void the proceedings, but instead leaves the subordinate lien holder with the same rights that he would have had at the commencement of the foreclosure proceedings. *Id.*

With these principles in mind, we conclude that WFC's attempt to establish its claim to the property in question was properly dismissed by summary judgment. Had Money been made a party to the foreclosure action, it would have no interest to assert because of its assignment to WFC. Moreover, WFC's rights are controlled by its failure to record the assignment and sec. 840.10, Stats., which states that after a lis pendens is filed:

> every ... encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings ... as if he [or she] were made a party thereto.

property subject to a foreclosure proceeding. We are aware, however, of language which could reasonably be construed as requiring service on all record owners regardless of that entity's actual interest when an assignee has failed to record its assignment. *See Mercantile Contract Purchase Corp. v. Melnick,* 47 Wis. 2d 580, 586, 177 N.W.2d 858, 861 (1970).

The mandate of this statute is unambiguous and extinguishes WFC's claim that its interest was not foreclosed by the prior proceedings. *See J. & S. Corp. v. Mortgage Assoc's., Inc.,* 41 Wis. 2d 418, 164 N.W.2d 221 (1969) (a second mortgagee assignee's unrecorded interest was extinguished in a foreclosure action even though the senior mortgagee plaintiff gained actual knowledge of the junior lien after the filing of a lis pendens but before entry of the foreclosure judgment).[4]

Alternatively, we also conclude that Money was properly served in the foreclosure action. WFC asserts that Knutson did not serve Money pursuant to sec. 180.11(2), Stats., which provides, in part, that:

> Whenever a corporation fails to appoint or maintain a registered agent in this state, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then *the Secretary of State shall be an agent of such corporation upon whom any such process ... may be served.* [Emphasis added.]

---

[4]The legal effect to parties who are not holders of a recorded interest in property at the time of the filing of a lis pendens is that the parties are bound and concluded by the foreclosure judgment to the same extent and in the same manner as if they had been joined and served as parties thereto. *J. & S. Corp. v. Mortgage Assoc's., Inc.,* 41 Wis. 2d 418, 423, 164 N.W.2d 221, 223–24 (1969). In this respect, WFC may be barred from attacking the preceding foreclosure judgment under the doctrine of *res judicata* which bars relitigation of the same cause of action between the same parties where the first litigation resulted in a valid and final judgment on the merits. *See Juneau Square Corp. v. First Wis. Nat'l Bank,* 122 Wis. 2d 673, 682, 364 N.W.2d 164, 169 (Ct. App. 1985).

Instead, Knutson served Money by publication under sec. 801.11(5)(b), Stats.[5] Section 801.11(5) provides in relevant part that service may be had upon a domestic or foreign corporation:

> (a) By personally serving the summons upon an officer, director or managing agent of the corporation either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.
> (b) If with reasonable diligence the defendant cannot be served under par. (a), then the summons must be served upon an officer, director or managing agent of the corporation by publication and mailing as provided in sub. (1).

Knutson contends that substituted service of Money by publication was proper since Money had been dissolved as a corporate entity in Wisconsin.

The arguments raised regarding this issue require us to construe two statutes, secs. 801.11(5) and 180.11(2), Stats. Statutory construction involves a question of law. *Behnke v. Behnke,* 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981). Consequently, we give no deference to the trial court's conclusion. *Id.*

The primary source of statutory construction is the statutory language itself. *Stoll v. Andriansen,* 122 Wis. 2d 503, 510, 362 N.W.2d 182, 186 (Ct. App. 1984). Generally, if the language of a statute is unambigu-

---

[5]It is not disputed that Knutson met the publication requirements of sec. 801.11(5)(b), Stats.

ous, the rules of statutory construction are inapplicable and we will give effect to the statute's plain meaning. *Id.* However, if the statutory language is ambiguous or if the literal application of clear statutory language would lead to an absurd or unreasonable result, we will apply the rules of statutory construction. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 52–53 (1981); *Coca-Cola Bottling Co. v. La Follette,* 106 Wis. 2d 162, 170, 316 N.W.2d 129, 133 (Ct. App. 1982). A statute is ambiguous if it is capable of being construed in two different ways by reasonably well-informed persons. *Kollasch,* 104 Wis. 2d at 561, 313 N.W.2d at 51–52. Statutory sections relating to the same subject matter must be construed together. *State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982). The language of competing statutes may create an ambiguity in one or both statutes. *Parker v. Percy,* 105 Wis. 2d 486, 490, 314 N.W.2d 166, 168 (Ct. App. 1981).

WFC notes that the dissolution of a corporation does not affect the corporation's existence for the purpose of lawsuits. *See* sec. 180.767, Stats. We agree and therefore conclude that Money's dissolution does not control our construction of secs. 180.11(2) and 801.11(5)(b), Stats. WFC also asserts that because the secretary of state is deemed to be an agent of the corporation, Knutson was required to serve the secretary of state when Money's registered agent could not be found. In this respect, WFC claims that Knutson's failure to serve the secretary of state violated the "reasonable diligence" provision of sec. 801.11(5)(b) thereby prohibiting Knutson from utilizing the service by publication provisions. We view WFC's basic contention to be that the substituted service provisions of

sec. 180.11 supersede the publication provisions of sec. 801.11(5)(b).

While we reject WFC's argument, we agree that the two statutes, when read together, are arguably ambiguous. When construing ambiguous statutes, we look to the statutory context, subject matter, scope, history and object to be accomplished. *Warren v. Link Farms, Inc.,* 123 Wis. 2d 485, 488, 368 N.W.2d 688, 690 (Ct. App. 1985). We search for a reasonable meaning. *Id.* at 489, 368 N.W.2d at 690.

The only legislative history we have discovered on this question is a legislative note:

> 180.11 makes the registered agent or, if none, the secretary of state, the corporation's agent for service of process. 262.09 (1949) authorizes service on certain local officers and employees within the state but makes no provision for the case where none of them can be found.

1951 Legislative Council notes, sec. 180.11, Wis. Stats. Ann.

However, we reject WFC's attempt to engraft sec. 180.11(2), Stats., as an additional service requirement onto the service procedures set forth in sec. 801.11(5)(b), Stats.[6] We conclude that the purpose of sec. 180.11(2) was to facilitate the obtaining of personal jurisdiction over a corporation which failed to

[6]In support of its argument, WFC cites case law from Minnesota. *See Kopio's, Inc. v. Bridgeman Creameries,* 79 N.W.2d 921 (Minn. 1956); *Henderson v. Northwestern Heating Engineers, Inc.,* 144 N.W.2d 46 (Minn. 1966). While we acknowledge that these cases may be read in support of WFC's argument, we do not find that language to be persuasive with respect to our interpretation of Wisconsin law.

maintain a registered agent or whose registered agent could not be located with reasonable diligence. In other words, we conclude the statute exists principally for the benefit of those who seek to sue such corporations—not to afford such corporations an opportunity to claim that other conventional forms of service are improper. While the statute mandates that the secretary of state shall be the agent of such corporations for purposes of service, the statute does not require that the secretary of state *must* be served in order to obtain personal jurisdiction over such a corporate entity. In fact, sec. 180.11(4) expressly provides:

> Nothing herein contained shall *limit* or *affect* the right to serve any process, notice or demand required or permitted by law to be served upon a corporation *in any other manner* now or hereafter permitted by law. [Emphasis added.]

Therefore, we construe secs. 180.11(2) and 801.11(5)(b), Stats., to provide alternative options for a party seeking substitute service on a corporation if personal service is unavailable under sec. 801.11(5)(a). A condition precedent to both secs. 180.11(2) and 801.11(5)(b) is that the corporation cannot be personally served with "reasonable diligence." If this condition is met, a party seeking service may utilize either method of substitute service.

Money further contends, however, that Knutson did not exercise reasonable diligence in attempting personal service. We disagree. The issue of reasonable diligence presents a question of fact which we affirm unless the finding is clearly erroneous. *Welty v. Heggy,* 124 Wis. 2d 318, 324, 369 N.W.2d 763, 767 (Ct. App.

1985), *cert. denied,* — U.S. —, 106 S. Ct. 344 (1985). Money's dissolution is a critical factor as to whether Knutson exercised reasonable diligence and thus was properly entitled to utilize methods of substituted service. Money's dissolution precluded Knutson from achieving personal service because Money was, in fact, no longer sited or operating in Wisconsin. In light of this evidence, we conclude the trial court's finding that Knutson exercised reasonable diligence in attempting to personally serve Money is not clearly erroneous. Consequently, we conclude that Knutson properly utilized the service by publication option.

*By the Court.*—Judgment affirmed.