**2023 WI App 42**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:     2022AP788

† Petition for Review Filed

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

v.

ALFRED TALYANSKY, SW TRANSMISSIONS MANAGER, LLC,
REMANNS, LLC, REMANNS MANAGER, LLC, QUALITY USED ENGINES,
LLC, ENGINE RECYCLER MANAGER, LLC, QUALITY USED
TRANSMISSIONS, LLC, QUALITY USED TRANSMISSIONS MANAGER,
LLC, QUALITY USED ENGINES MANAGER, LLC, MIDWEST AUTO
RECYCLING, LLC, ENGINE SHOPPER, LLC, ENGINE SHOPPER
MANAGER, LLC, ENGINE & TRANSMISSION WORLD, LLC, BELDEN
MFG, LLC, APLS ACQUISITION, LLC, ENGINE RECYCLER, LLC, SW
ENGINES MANAGER, LLC, SW ENGINES, LLC, SW TRANSMISSIONS,
LLC, U NEED ENGINES MANAGER, LLC, AND U NEED ENGINES, LLC,

DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.†

| | |
|---|---|
| Opinion Filed: | July 25, 2023 |
| Submitted on Briefs: | March 17, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, C.J., Donald, P.J., and White, J. |
| Concurred: | |
| Dissented: | |

Appellant

ATTORNEYS:        On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the brief of *Brian P. Keenan* and *Clayton P. Kawski*, assistant attorneys general, and *Joshua L. Kaul*, attorney general.

Respondent
ATTORNEYS:        On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the brief of *Douglas W. Rose*, *Jennifer Geller Baumann*, and *Kaitlynn E. Ebben* of Rose & deJong, S.C. of Milwaukee.

## COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 25, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.** **2022AP788** | Cir. Ct. No. 2017CX4 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

**STATE OF WISCONSIN,**

> **PLAINTIFF-APPELLANT-CROSS-RESPONDENT,**

**V.**

**ALFRED TALYANSKY, SW TRANSMISSIONS MANAGER, LLC, REMANNS, LLC, REMANNS MANAGER, LLC, QUALITY USED ENGINES, LLC, ENGINE RECYCLER MANAGER, LLC, QUALITY USED TRANSMISSIONS, LLC, QUALITY USED TRANSMISSIONS MANAGER, LLC, QUALITY USED ENGINES MANAGER, LLC, MIDWEST AUTO RECYCLING, LLC, ENGINE SHOPPER, LLC, ENGINE SHOPPER MANAGER, LLC, ENGINE & TRANSMISSION WORLD, LLC, BELDEN MFG, LLC, APLS ACQUISITION, LLC, ENGINE RECYCLER, LLC, SW ENGINES MANAGER, LLC, SW ENGINES, LLC, SW TRANSMISSIONS, LLC, U NEED ENGINES MANAGER, LLC, AND U NEED ENGINES, LLC,**

> **DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.**

APPEAL and CROSS-APPEAL from an order of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Reversed and cause remanded with directions; cross-appeal dismissed.*

Before Brash, C.J., Donald, P.J., and White, J.

¶1 DONALD, P.J. This appeal and cross-appeal involve a consumer protection action filed under the Deceptive Trade Practices Act, WIS. STAT. § 100.18 (2021-22),[1] against multiple defendants, here the Defendants-Respondents-Cross-Appellants, who we collectively refer to as "Midwest."

¶2 On appeal, the State contends that the circuit court improperly determined that WIS. STAT. § 100.18(1) does *not* apply to misrepresentations made by a Wisconsin business to a consumer out-of-state, and that the State needed to establish that someone suffered a pecuniary loss in order to prove a violation of § 100.18(1) and (10r). In its combined response and cross-appeal, Midwest disagrees with the State, and additionally contends that the circuit court erred in failing to award costs to Midwest.

¶3 As discussed below, we agree with the State that the circuit court improperly found that WIS. STAT. § 100.18(1) only applies to misrepresentations made to in-state consumers, and that the State needed to prove that someone suffered a pecuniary loss. Accordingly, we reverse and remand for a new trial. Further, because we are reversing and remanding for a new trial, we hold that Midwest's request for costs is moot, and therefore the cross-appeal is dismissed.

---

[1] The representations at issue in this case took place between June 24, 2014, to December 1, 2021. However, because the relevant statutory language has not changed, all references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

## BACKGROUND

¶4      In the nineties, Alfred Talyansky's family founded Mid City Auto Salvage, the predecessor company to Midwest. Mid City Auto Salvage, operated a salvage yard in the City of Milwaukee. Initially, Mid City obtained its inventory from vehicle auctions. The vehicle parts would then be sold out of the Milwaukee location.

¶5      In 2006, Mid City was dissolved and Midwest Auto Recycling was created and opened a new physical location in Cudahy, Wisconsin. Due to the internet boom, Midwest Auto Recycling opted to focus on online sales of specific auto parts, including engines, transmissions, axles, transfer cases, and superchargers. To expand the business, Midwest Auto Recycling created various websites and companies—the other listed respondents in this case—to advertise and sell the auto parts to people and businesses throughout the United States.

¶6      Beginning in 2015, the State received hundreds of complaints regarding Midwest. The complaints ranged from misrepresentations about the mileage of parts to the quality of the parts sold.

¶7      On June 23, 2017, the State filed a complaint, alleging that Midwest committed the following violations: (1) fraudulent misrepresentations under WIS. STAT. § 100.18(1) in marketing and selling; (2) fraudulent misrepresentations under § 100.18(10r) regarding where their business was located; and (3) unfair billing practices under WIS. STAT. § 100.195(2)(a).[2]

---

[2] On February 12, 2018, the State filed an amended summons and complaint, which included the same causes of action.

3

¶8     On June 30, 2018, the State filed a witness disclosure which contained the names of 477 consumers alleged to have purchased a used engine or transmission from Midwest, six of whom were located in Wisconsin. Subsequently, on July 24, 2018, the State filed a motion for a temporary injunction, which the circuit court denied.

¶9     On July 27, 2018, Midwest filed a motion seeking partial summary judgment on the claims related to persons outside of Wisconsin. Alternatively, the motion requested that the circuit court issue an order defining the scope of the State's claims and limiting the claims to those based on representations to persons within Wisconsin.

¶10    On September 13, 2018, the circuit court denied Midwest's motion for partial summary judgment because there were "underlying facts that [were] unknown, uncertain, and likely disputed." In its decision, the court stated that WIS. STAT. § 100.18 did not require that "the conduct, statements, or consumers must be in Wisconsin[.]" The court stated that "there is no clear line, such as Wisconsin's border, at which the [c]ourt can conclude that the State may no longer take action[.]" Additionally, the court denied Midwest's motion to define the scope of the State's claim as "the State indicates that it intends to enforce the statute for consumers inside and outside of Wisconsin."

¶11    In October 2018, Midwest sought an interlocutory appeal, which this court denied on April 9, 2019.

¶12    On November 5, 2018, the State filed an amended witness disclosure list that reduced the number of witnesses to forty-two consumer witnesses with two witnesses from Wisconsin. Subsequently, the State filed a pretrial report, which further narrowed the list and stated that the State "intend[ed] to present the

4

testimony of 20 consumer witnesses to the jury," and sixteen would be held "in reserve."

¶13     On March 1, 2021, Midwest filed a motion to reconsider the denial of its motion for partial summary judgment.[3]  The motion argued that since the 2018 circuit court decision, a federal decision—***T&M Farms v. CNH Indus. Am., LLC***, 488 F. Supp. 3d 756 (E.D. Wis. 2020)—had determined that WIS. STAT. § 100.18(1) does not apply to consumers outside of Wisconsin.  On April 19, 2021, the circuit court heard Midwest's motion for reconsideration, and granted it.

¶14     On October 6, 2021, Midwest filed a memorandum of remaining trial issues, as a new judge was assigned to the case due to a judicial rotation.[4]  In particular, Midwest sought to exclude:  any out-of-state witness testimony; an expert witness report from Jocelyn Henning, a State of Wisconsin employee; and testimony from Tony Mooneyham, a third-party marketing person who did online marketing and website work for Midwest.

¶15     The State filed its own memorandum, along with an offer of proof regarding seven of its trial witnesses.  The State argued that it should be permitted to introduce evidence showing Midwest's general business practices.

¶16     First, the State asserted that Henning would summarize data from the discovery records to compare the mileage in the quotes provided to potential consumers with the actual mileage of parts delivered to the consumers.  According to the State, Henning's testimony would show that Midwest systematically

---

[3]  The trial was delayed due to the COVID-19 pandemic.

[4]  The case was transferred from the Honorable William S. Pocan to the Honorable William Sosnay, who presided over the remainder of the proceedings.

misrepresented the mileage of the parts they sold. In addition to Henning, relatedly, the State sought to introduce the testimony of two employees of one of Midwest's suppliers, primarily to authenticate the records and provide information about Midwest's business practices.

¶17 Second, the State sought to introduce the testimony of three out-of-state consumers. The State indicated that the consumer witnesses would testify regarding how the engines they received did not match up with the representations that had been made.

¶18 Lastly, the State explained that Mooneyham's testimony would include why Midwest had websites with different names, how Midwest measured the performance of their websites, and how Talyansky controlled the content of the websites.

¶19 On November 8, 2021, in an oral ruling, the circuit court ruled that evidence regarding "incidents that occurred outside Wisconsin, meaning dealing with residents of other states, is not admissible." The court stated that under WIS. STAT. § 904.03, the evidence and testimony in the State's offer of proof would be "unfairly and unduly prejudicial[.]"

¶20 A jury trial commenced on November 29, 2021. The State called Talyansky, two witnesses who were employed by Talyansky and Midwest, and Joseph Koehler. Midwest called a shop manager to testify and also recalled Talyansky.

¶21 In particular, Koehler, from Westfield, Wisconsin, testified that he purchased a used transmission with a supposed mileage of 78,176 from the Quality Used Transmissions website. Koehler believed that the transmission was in Quality

6

Used Transmissions' inventory. According to the sales quote, the transmission was tested, visually inspected, and cleaned. Shortly after the transmission was installed in his family vehicle, Koehler needed to have the transmission replaced as a dealer told him that the vehicle should not be driven. Quality Used Transmissions provided a second used transmission, but it refused to cover the labor installation cost for the second replacement transmission, rejecting Koehler's proof regarding the odometer reading.

¶22 After the completion of testimony, the parties and the circuit court discussed the jury instructions outside the presence of the jurors. Relevant to this appeal, the court stated that it would provide the standard jury instruction WIS JI-CIVIL 2418 on unfair trade practices. The court indicated that the parties had submitted a modification of the jury instruction, which left out the third element—that the plaintiff sustained a monetary loss as a result of the representation. The court stated that to exclude the third element "would be a mistake." The court explained that it is "fundamental that [the State] would have to show that there has been some loss as a result of what they claim was false advertising," or "the statute itself would really stand for nothing." The State objected, arguing that "only the first two elements were required to be proved to establish a violation of the statute." The circuit court rejected the State's argument. Consistent with the court's ruling, a question was added to the special verdict form that asked the jury to find whether any Wisconsin consumer sustained a monetary loss.

¶23 The jury first found Midwest's advertisements to Wisconsin consumers were not untrue, deceptive, or misleading. Second, the jury found that four of Midwest's websites published a misrepresentation that the business behind the website was in a certain community or region when it was not. Third, the jury found that representations in sales quotes from June 14, 2014, to the time of trial,

7

were not untrue, deceptive, or misleading in regards to the mileage of the used auto part offered for sale, and whether the auto part was compression tested. Fourth, the jury found that Talyansky had knowledge of, and the ability to control the representations in the first two findings. Lastly, the jury found that the State had failed to prove a Wisconsin consumer had suffered a monetary loss due to a misrepresentation.

¶24 Both parties filed motions for judgment on the verdict and costs. In its motion for judgment, the State sought a permanent injunction to prevent Midwest from misrepresenting the location of their businesses, and a civil forfeiture for Midwest's alleged violation of WIS. STAT. § 100.18(10r). The circuit court granted a judgment on the verdict for Midwest, declined to order costs to either party, and dismissed the case.

## DISCUSSION

¶25 On appeal, the State contends that the circuit court committed two errors of law justifying a new trial. First, the State contends that the circuit court improperly determined that WIS. STAT. § 100.18(1) does *not* apply to misrepresentations made by a Wisconsin business to a consumer outside Wisconsin. Second, the State contends that the circuit court improperly found that the State needed to prove that someone suffered a pecuniary loss in order to prove a violation of § 100.18(1) and (10r).

¶26 In its combined response and cross-appeal, Midwest contends that WIS. STAT. § 100.18(1) provides a cause of action only for advertising received within Wisconsin, and the State was required to prove a pecuniary loss. In addition, Midwest argues that the circuit court erred by failing to award costs against the State.

¶27    Below, we first address the plain language of WIS. STAT. § 100.18(1). We then examine whether the State was required to prove that there was a pecuniary loss. Finally, we turn to Midwest's request for costs.

### I.    Plain Language of WIS. STAT. § 100.18(1)

¶28    When interpreting a statute, we begin our analysis by looking at the language of the statute. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the words of a statute are plain, we stop our inquiry and apply the words chosen by the legislature. *Id.* "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Statutory interpretation presents a question of law that is reviewed *de novo*. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶26, 299 Wis. 2d 561, 729 N.W.2d 396.

¶29    WISCONSIN STAT. § 100.18(1), the statute at issue here, provides in pertinent part that:

> No person, firm, corporation or association, or agent or employee thereof ... shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state ... an advertisement, announcement, statement or representation of any kind to the public ... which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

¶30    The plain language of the statute prohibits anyone from "mak[ing]," "publish[ing]," or "caus[ing] … to be made … in this state" an advertisement or other representation that contains an "untrue, deceptive or misleading" assertion, representation, or statement. *Id.* The verbs, which include "make," "publish," and

"cause," focus on the advertiser's conduct or actions, not the recipient or the consumer. After a comma, the statute provides that these actions may not take place "in this state." The statute does not proscribe where the recipient or consumer must be or reside. Thus, based on the plain language of the statute, we conclude that the State can enforce WIS. STAT. § 100.18(1) against Wisconsin businesses that reach consumers outside of the state. We will not add words to a statute that are not present. *See Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write.").

¶31     Midwest argues that the phrase "in this state" means that "the offending representation must be placed before the public in Wisconsin." We disagree. There is a comma that separates the phrase "before the public" and "in this state." If "in this state" modified "before the public," then there would be no need for a comma. *See State ex rel. Ahlgrimm v. State Elections Bd.*, 82 Wis. 2d 585, 589-90, 263 N.W.2d 152 (1978) (concluding that the use of a comma separating one phrase from another phrase meant that the latter phrase did not modify the prior phrase).

¶32     Moreover, the legislature could have added language that limited a violation of WIS. STAT. § 100.18(1) to a consumer based in Wisconsin, but chose not to do so. For example, in a different section of Chapter 100, the consumer is specifically identified as a resident of Wisconsin. *See* WIS. STAT. § 100.174(1)(a)1.-2. (defining "buyer" as an individual who is a resident of this state and receives a solicitation in Wisconsin). In contrast, § 100.18(1) does not identify or define the recipient or consumer of the advertisement or representation at all.

¶33   In its decision granting Midwest's motion for reconsideration, the circuit court relied on ***T&M Farms***, 488 F. Supp. 3d 756.  In ***T&M Farms***, two cotton farms alleged that they purchased cotton pickers from CNH Industrial America, LLC (CNH), a Wisconsin business.  ***Id.*** at 758, 761.  According to the cotton farms, CNH misrepresented the quality and performance of their pickers and failed to ensure that sufficient replacement parts would be available for needed repairs.  ***Id.*** at 759.

¶34   CNH moved to dismiss the claims, and the district court granted a dismissal in relevant part because CNH did not make the allegedly deceptive representations "in this state."  ***Id.*** at 760, 761.  The district court explained that to achieve WIS. STAT. § 100.18(1)'s statutory purpose of protecting Wisconsin residents from deceptive advertising, the phrase "in this state" must be "referring to the location of the advertising rather the advertiser."  ***Id.*** at 762 (emphasis omitted).  *Contrast with* ***Le v. Kohls Dept. Stores, Inc.***, 160 F. Supp. 3d 1096, 1115 (E.D. Wis. 2016) (holding that § 100.18(1) applies to a Wisconsin business even in cases where the advertising is seen by a consumer in another state).

¶35   As the State observes, the district court's interpretation in ***T&M Farms*** skipped a plain language reading of the statute and focused instead on the purpose of the statute.  However, Wisconsin law requires courts to first examine the plain language of the statute, and if the plain language of the statute is clear, we stop the inquiry.  *See* ***Kalal***, 271 Wis. 2d 633, ¶45.  We only go beyond the language of

the statute when the plain language is ambiguous.[5]  Thus, we do not find ***T&M Farms*** persuasive.[6]

¶36    In addition, Midwest contends that applying WIS. STAT. § 100.18(1) to advertisements received by consumers outside Wisconsin creates extraterritorial and constitutional problems.  To start, Midwest does not develop an argument explaining how the State securing a forfeiture or an injunction against an in-state business would involve an extraterritorial application.  As discussed above, the plain language of § 100.18(1) provides that the State can bring an action against in-state businesses for making misrepresentations regardless of whether the misrepresentations are received by out-of-state residents.

¶37    Moreover, there is no constitutional problem.  The dormant commerce clause "invalidates state statutes that 'may adversely affect interstate commerce by subjecting activities to inconsistent regulations.'"  ***Morley-Murphy Co. v. Zenith Elecs. Corp.***, 142 F.3d 373, 379 (7th Cir. 1998) (citations omitted).  Midwest, however, does not establish that there is inconsistent regulation.  As the State asserts, all Wisconsin businesses must do to comply with the law is refrain from making misrepresentations in their advertising.  If Midwest has to follow the law

---

[5] We note that ***T&M Farms v. CNH Industrial America, LLC***, 488 F. Supp. 3d 756, 762 (E.D. Wis. 2020) also relied on a 1928 Attorney General opinion, which addressed whether a plaintiff could institute an action against a Chicago firm that made allegedly misleading statements in Wisconsin publications.  *See* 17 Op. Atty. Gen. 194 (1928).  This one-page opinion, however, did not interpret the relevant statutory language, which at that time was in WIS. STAT. § 343.413, but instead advised that a plaintiff could institute an action against the firm if it obtained service on an officer or agent of the firm in Wisconsin.  ***Id.***

[6] Midwest also discusses ***Hydraulics International, Inc. v. Amalga Composites, Inc.***, No. 20-CV-371, 2022 WL 4273475, *10 (E.D. Wis. Sept. 2022), which determined that the application of WIS. STAT. § 100.18(1) only applies to Wisconsin consumers.  In reaching this conclusion, the district court determined that the statutory language was unclear.  ***Id.***, *8.  We disagree.  As discussed above, we conclude that the language of the statute plainly allows the State to bring an action against an in-state business regardless of whether the misrepresentations are received by out-of-state residents.  Thus, we do not find ***Hydraulics*** persuasive.

for in-state residents, there should be no issue following the law for out-of-state residents given that both view the same websites.

¶38     Finally, Midwest contends that the State does not have standing to bring an action.  However, WIS. STAT. § 100.18(11)(a) provides that "[a]ctions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department in the name of the state in any court having equity jurisdiction."  Similarly, § 100.18(11)(d) states that the State may enforce against "any violation of this section."  Thus, we reject Midwest's argument that the State does not have standing.

¶39     Therefore, the circuit court erred when it prohibited the State from introducing evidence that Midwest made misrepresentations reaching consumers outside Wisconsin.  The plain language of WIS. STAT. § 100.18(1) does not require that an advertisement or representation must be made to a Wisconsin resident. Accordingly, we conclude that the State is entitled to a new trial.

## II.     Pecuniary Loss

¶40     Next, we address whether the State needed to prove a pecuniary loss under WIS. STAT. § 100.18.

¶41     Midwest asserts that Wisconsin precedent—*Novell v. Migliaccio*, 2008 WI 44, ¶49, 309 Wis. 2d 132, 749 N.W.2d 544 and *K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 2007 WI 70, ¶19, 301 Wis. 2d 109, 732 N.W.2d 792—establishes that the State must demonstrate a pecuniary loss.  These cases, however, address private party lawsuits brought under WIS. STAT. § 100.18(11)(b)2., which provides that "[a]ny person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of

competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees[.]" *See Novell*, 309 Wis. 2d 132, ¶¶26-28; *K & S Tool*, 301 Wis. 2d 109, ¶19. The State, however, did not invoke this section, and instead brought this action under § 100.18(1) and (10r), which do not require the State to prove a pecuniary loss.

¶42     Instead, we find *State v. American TV & Appliance of Madison, Inc.*, 146 Wis. 2d 292, 430 N.W.2d 709 (1988), instructive. In *American TV*, which involved an action brought by the State against an appliance dealer, our supreme court explicitly stated that there were two elements of the offense under WIS. STAT. § 100.18(1): (1) there must be an advertisement or announcement; and (2) the advertisement or announcement must contain a statement which is "untrue, deceptive, or misleading." *See American TV*, 146 Wis. 2d at 295, 300. Thus, the court did not require that the State prove a pecuniary loss to establish a violation under § 100.18(1).[7] As a result, we conclude that the circuit court erred when it instructed the jury that the State had to prove that it "sustained a monetary loss as a result of the assertion, representation or statement," submitted a question to the jury asking whether "any Wisconsin consumer sustain[ed] a monetary loss," and denied the State relief after the verdict.

¶43     Alternatively, Midwest contends that even if pecuniary loss is not an element, any error was harmless. We disagree. Under WIS. STAT. § 805.18(1), "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse

---

[7] We note that the circuit court distinguished *State v. American TV & Appliance of Madison Inc.*, 146 Wis. 2d 292, 430 N.W.2d 709 (1988), because it involved a motion to dismiss. However, it is unclear why this would have mattered. The elements of a claim remain the same regardless of the procedural posture of the case.

14

party." For an error to affect the "substantial rights of a party," there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. *See Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 108, 522 N.W.2d 542 (Ct. App. 1994). Here, the error was not harmless because the jury found that Midwest misrepresented the location of four of their businesses, and the circuit court denied the State any relief based on the circuit court's incorrect view that the State needed to prove a pecuniary loss.

¶44 Midwest argues that the error was harmless because the special jury verdict separately asked whether a misrepresentation occurred and whether a pecuniary loss resulted from that misrepresentation. In support, Midwest relies on *Rashke v. Koberstein*, 220 Wis. 75, 264 N.W. 643 (1936), which found that "no harm resulted to appellants for including in the verdict a question as to comparative negligence which the jury were not to answer unless they first found the plaintiff guilty of contributory negligence[.]" As the State observes, however, *Rashke* is inapposite because it involved the issue of comparative and contributory negligence, not whether the jury was improperly instructed regarding a pecuniary loss.

¶45 Midwest also argues that the State is not entitled to relief because it did not introduce any consumer testimony that a location misrepresentation occurred in Wisconsin under WIS. STAT. § 100.18(10r), and the circuit court properly determined that granting a permanent injunction was not warranted. Section 100.18(10r), however, is devoid of any language about "in this state." In addition, the circuit court's denial of the State's request for an injunction was based on its incorrect belief that the State was required to prove a pecuniary loss. A circuit court erroneously exercises its discretion if it makes an error of law. *See LeMere v. LeMere*, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789. Accordingly, we

conclude the circuit court erred when it required the State to prove a pecuniary loss, and we reverse and remand for a new trial.

### III.    Request for Costs

¶46    Lastly, we address Midwest's request for costs against the State. Midwest contends that the circuit court erred in failing to award costs against the State. According to Midwest, the State is not immune from costs under WIS. STAT. §§ 814.03 and 814.04, and any immunity that might exist was waived when the State voluntarily commenced a lawsuit and requested relief on behalf of consumers out-of-state.

¶47    The State responds that if this court reverses the circuit court's judgment, the issue of costs is moot. Alternatively, the State contends the circuit court properly denied costs to Midwest. According to the State, WIS. STAT. §§ 814.03 and 814.04 do not authorize costs against the State, and the State did not waive sovereign immunity from costs by filing a circuit court action.

¶48    Given that we are reversing the circuit court's judgment, and Midwest is no longer a prevailing party, we agree with the State that this issue is moot. *See State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425 ("An issue is moot when its resolution will have no practical effect on the underlying controversy."). Therefore, we do not address it. *Id.*

### CONCLUSION

¶49    In sum, for the reasons discussed above, we reverse and remand for a new trial. Further, we conclude that Midwest's request for costs is moot, and therefore dismiss the cross-appeal.

16

*By the Court.*—Order reversed and cause remanded with directions; cross-appeal dismissed.